## UNITED STATES DISTRICT COURT FOR
## THE EASTERN DISTRICT OF MICHIGAN
## SOUTHERN DIVISION

Katrina Bergunder,
Plaintiff,
v.                                                    Case No. 23-12886
JPMorgan Chase Bank, N.A.,                            Hon. Sean F. Cox
Defendant.

| | |
|---|---|
| Katrina Bergunder<br>24674 Republic Ave<br>Oak Park, MI 48237<br>(773) 853-7085<br>Bergunki@msn.com<br>*Pro Per* | Aimee R. Gibbs (P70522)<br>Davina A. Bridges (P85597)<br>DICKINSON WRIGHT PLLC<br>350 S. Main Street, Suite 300<br>Ann Arbor, MI 48104<br>(734)-623-1653<br>agibbs@dickinsonwright.com<br>dbridges@dickinsonwright.com<br><br>*Attorneys for Defendant JPMorgan*<br>*Chase Bank, N.A* |

## PLAINTIFF'S RESPONSE TO DEFENDANT'S MOTION TO STRIKE THE
## AMENDED COMPLAINT AND ENFORCE SETTLEMENT

Plaintiff Katrina Bergunder, appearing pro se, respectfully submits this response to Defendant's

motion to strike the amended complaint and enforce the settlement agreement.

Defendant JPMorgan Chase Bank, N.A. has filed a motion to enforce a settlement agreement and

strike the amended complaint. Plaintiff contends that no final settlement agreement was reached

due to unresolved terms, and thus the settlement agreement was never signed. Additionally,

misconduct of attorney, procedural and substantive errors, including violations of E.D. LR 7.1

and the judge's specific instructions, justify denying the motion. The contradictions in the relief

sought by Chase and the concealment of weak reasoning for refusing to continue negotiations

further undermine their motion.

Furthermore, with the additional time graciously granted by this court which relieved Plaintiff of

pressures and emotional duress, Plaintiff has extensively researched to the realization that this

settlement agreement stems from a tainted and compromised process thus cannot be agreed to.

This process was marked by breaches of fiduciary duty and client-attorney privilege, Plaintiff's

reliance on documents provided solely by Defendant's counsel rather than from a complete file

conveyance by the former attorney (Exhibit 8, Exhibit 9, Exhibit 10, Exhibit 11, Exhibit 12), and

curiously advocacy by Defendant's counsel for Plaintiff's former attorney's interests. Plaintiff

asks this court to deny this motion to enforce settlement, and award its costs and attorneys' fees,

as well as any further relief the Court deems just.

Respectfully submitted,

**By:  _/s/ Katrina Bergunder_**
Katrina Bergunder
24674 Republic Ave
Oak Park, MI 48237
(773)853-7085
*Pro Per*

Dated: July 16, 2024

**UNITED STATES DISTRICT COURT FOR
THE EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION**

Katrina Bergunder,
Plaintiff,                                          Case No. 23-12886
v.                                                  Hon. Sean F. Cox
JPMorgan Chase Bank, N.A.,
Defendant.

<table>
<tr>
<td>
Katrina Bergunder<br>
24674 Republic Ave<br>
Oak Park, MI 48237<br>
(773) 853-7085<br>
Bergunki@msn.com<br>
<em>Pro Per</em>
</td>
<td>
Aimee R. Gibbs (P70522)<br>
Davina A. Bridges (P85597)<br>
DICKINSON WRIGHT PLLC<br>
350 S. Main Street, Suite 300<br>
Ann Arbor, MI 48104<br>
(734)-623-1653<br>
agibbs@dickinsonwright.com<br>
dbridges@dickinsonwright.com<br>
<br>
<em>Attorneys for Defendant JPMorgan<br>
Chase Bank, N.A</em>
</td>
</tr>
</table>

**PLAINTIFF'S BRIEF TO DENY DEFENDANT'S MOTION TO STIKE
PLAINTIFF'S AMENDED COMPLAINT AND FOR ENTRY OF AN ORDER TO
ENFORCE SETTLEMENT**

# **Table of Contents**

PLAINTIFF'S RESPONSE TO DEFENDANT'S MOTION TO STRIKE THE AMENDED COMPLAINT AND ENFORCE SETTLEMENT ........................................................................... 1

PLAINTIFF'S BRIEF TO DENY DEFENDANT'S MOTION TO STIKE PLAINTIFF'S AMENDED COMPLAINT AND FOR ENTRY OF AN ORDER TO ENFORCE SETTLEMENT ............................................................................................................................................. 3

INDEX OF AUTHORITIES ................................................................................................ 5

STATEMENT OF QUESTIONS PRESENTED .................................................................. 7

MOST APPROPRIATE AUTHORITIES ........................................................................... 8

II. Argument ......................................................................................................................... 9

   A. Lack of Mutual Assent .............................................................................................. 9

   B. Entire Agreement Clause Voids Enforcement & Assent Without Signature ........... 9

   C. Recent Communication and Settlement discussions had been abandoned or paused ......... 10

   D. Exclusion from Negotiation Talks ........................................................................ 12

E. Protection of First Amendment and Consumer Rights ........................................................ 13

F. Rule 408 Protection and Obscuring Redactions ............................................................. 13

G. Misconduct & Conflict of Interest by Former Attorneys & Duress .................................... 14

H. E. D. Mich. LR 7.1 & Judge's Scheduling Order Violated .................................................. 17

I. Contradictions in Relief Sought .................................................................................... 18

J. Against Defendant's Motion to Strike Plaintiff's First Amended Complaint ...................... 18

K. Lack of Proper Advisement ......................................................................................... 19

III. Conclusion ................................................................................................................ 20

Certificate of Service ....................................................................................................... 21

Exhibit 1: First Time Receiving Settlement Agreement ...................................................... 22

Exhibit 2: Social Media Posting from Sister of Mr. Taub .................................................... 23

Exhibit 3: Obituary for Tracy Taub, Mr. Taub's Wife ......................................................... 24

Exhibit 4: Mr. Taub's E-Mail Minutes After Emotional Call ................................................ 25

Exhibit 5: E-Mail Firing Mr. Taub and Associates ............................................................. 26

Exhibit 6: Call Log Records during Settlement Talks .......................................................... 27

Exhibit 7: Call Log from Emotional Outburst Call with Mr. Taub ......................................... 28

Exhibit 8: Letter asking for conveyance again. .................................................................. 29

Exhibit 9: Disconcerting Response from Mr. Taub ............................................................. 30

Exhibit 10: Bergunder Imploring for File Conveyance & Timeline ....................................... 31

Exhibit 11: Taub Response to File Conveyance .................................................................. 32

Exhibit 12: Bergunder Final Attempts for File Conveyance ................................................. 33

Exhibit 13: Taub Withdrawal Shortly After Emotional Call ................................................. 34

Exhibit 14: Defendant's Reasoning for Refusing and Ceasing Negotiations .......................... 35

Exhibit 15: Plaintiff Refuting Reasoning for Ceasing Negotiations ...................................... 36

Exhibit 16: *Winston v. Mediafare Entertainment Corp.*, 777 F.2d 78 (2d Cir. 1985) .............. 37

Exhibit 17: *Oubre v. Entergy Operations, Inc.*, 522 U.S. 422 (1998) ................................... 44

Exhibit 18: *Strickland v. Washington*, 466 U.S. 668 (1984) ................................................ 66

## <u>INDEX OF AUTHORITIES</u>

<u>Cases</u>

*Bates v. State Bar of Arizona*, 433 U.S. 350 (1977)

*Bryce v. Episcopal Church in the Diocese of Colorado*, 289 F.3d 648 (10th Cir. 2002)

*Hamilton v. Farmers Insurance Co.,* 245 F.3d 992 (9th Cir. 2001)

*In re High Fructose Corn Syrup Antitrust Litigation*, 293 F. Supp. 2d 854 (C.D. Ill. 2003)

*Jones v. Barnes*, 463 U.S. 745 (1983)

*Kokkonen v. Guardian Life Ins. Co. of America*, 511 U.S. 375 (1994)

*Mullane v. Central Hanover Bank & Trust Co*., 339 U.S. 306 (1950)

*Oubre v. Entergy Operations, Inc*., 522 U.S. 422 (1998)

*Strickland v. Washington*, 466 U.S. 668 (1984)

*Winston v. Mediafare Entertainment Corp*., 777 F.2d 78 (2d Cir. 1985)

*Bose Corp. v. Consumers Union of U.S., Inc*., 466 U.S. 485 (1984)

*Goodyear Tire & Rubber Co. v. Chiles Power Supply, Inc.,* 332 F.3d 976 (6th Cir. 2003)

<u>Statutes and Rules</u>

Federal Rule of Evidence 408

Model Rules of Professional Conduct, Rule 1.4

Model Rules of Professional Conduct, Rule 1.16(a)(2)

Model Rules of Professional Conduct, Rule 1.16(d)

Restatement (Second) of Contracts § 17

Restatement (Second) of Contracts § 163

<u>Constitutional Provisions</u>

First Amendment, U.S. Constitution

Sixth Amendment, U.S. Constitution

Fourteenth Amendment, U.S. Constitution

**<u>Local Rules</u>**

E.D. Mich. LR 7.1

## STATEMENT OF QUESTIONS PRESENTED

1. Whether the Court should deny Defendant's motion to enforce the settlement agreement on the grounds that no mutual assent was reached, as evidenced by the absence of Plaintiff's signature and unresolved terms in the purported agreement. Bergunder answers yes.

2. Whether the entire agreement clause within the unsigned settlement agreement voids its enforceability, given that it requires the signatures of all parties to be binding. Bergunder answers yes.

3. Whether the procedural and substantive errors, including violations of E.D. Mich. LR 7.1 and the judge's specific instructions, justify denying Defendant's motion to enforce the settlement agreement. Bergunder answers yes.

4. Whether the exclusion of Plaintiff from negotiation talks by her former attorney, and the subsequent breaches of fiduciary duty and client-attorney privilege, undermined the validity of the settlement agreement. Bergunder answers yes.

5. Whether the compromised state of Plaintiff's former attorney, due to significant personal issues, affected his ability to represent Plaintiff effectively, thereby making the settlement agreement unenforceable under the precedent set by *Strickland v. Washington* and *Hamilton v. Farmers Insurance Co.*. Bergunder answers yes.

## MOST APPROPRIATE AUTHORITIES

**Cases:**

*Winston v. Mediafare Entertainment Corp*., 777 F.2d 78 (2d Cir. 1985)

*Oubre v. Entergy Operations, Inc*., 522 U.S. 422 (1998)

*Strickland v. Washington*, 466 U.S. 668 (1984)

**Statutes and Rules:**

Model Rules of Professional Conduct, Rule 1.4

Model Rules of Professional Conduct, Rule 1.16

Restatement (Second) of Contracts § 17

**Constitutional Provisions:**

First Amendment, U.S. Constitution

Sixth Amendment, U.S. Constitution

Fourteenth Amendment, U.S. Constitution

**Local Rules:**

E.D. Mich. LR 7.1

**II. Argument**

## A. Lack of Mutual Assent

The fundamental principle of contract law requires mutual assent for a contract to be binding. As

outlined in *Restatement (Second) of Contracts* § 17[1], the formation of a contract requires a

bargain in which there is a manifestation of mutual assent to the exchange and a consideration. In

the present case, my lack of signature on the settlement agreement is a clear manifestation of my

assent, which is currently absent. Without Plaintiff's signature, there is no mutual assent, and

thus, no enforceable agreement. Plaintiff did not sign the settlement agreement, indicating that

the negotiations did not result in a final, binding agreement.

Additionally, the exhibits presented by the defense are conveniently redacted, further obscuring

the unresolved terms and the lack of mutual assent. Based on the precedent established in

*Winston v. Mediafare Entertainment Corp*[2]., where the court reversed a judgment enforcing a

settlement agreement due to the absence of a binding contract formed by fully executed

documents, we argue against the motion to enforce settlement.

## B. Entire Agreement Clause Voids Enforcement & Assent Without Signature

The settlement agreement explicitly includes an "entire agreement clause" in Section 8. The

defense's motion to enforce the settlement agreement without my signature should be denied on

the basis that the settlement agreement includes an "entire agreement clause." This clause

establishes that the agreement constitutes the complete and exclusive terms of the settlement

between the parties. It supersedes all prior oral or written statements, representations, and

covenants. Therefore, for the agreement to be valid and enforceable, it must include the

---

[1] *Restatement (Second) of Contracts* § 17 (Am. Law Inst. 1981).
[2] *Winston v. Mediafare Entm't Corp.*, 786 F.2d 554 (2d Cir. 1986).

9

signatures of both parties. Without my signature, there is no mutual assent, rendering the

agreement incomplete and unenforceable.

In *Oubre v. Entergy Operations, Inc*.[3], the Supreme Court emphasized that for a settlement

agreement to be enforceable, it must be entered into knowingly and voluntarily.  This precedent

aligns with the intention behind the entire agreement clause in the settlement agreement,

reinforcing that without my signature, the agreement cannot be considered complete or

enforceable.

These principles are further supported by the *Restatement (Second) of Contracts § 17*[4], which

requires a manifestation of mutual assent for a contract to be binding. In the present case, my

signature on the settlement agreement is a necessary manifestation of my assent, which is

currently absent. Thus, the entire agreement clause voids enforcement without my signature,

ensuring that the settlement is not valid until all parties have signed and mutually agreed to its

terms.

## C. Recent Communication and Settlement discussions had been abandoned or paused

Prior to my Motion to Confirm Pro Se Status, which Defendant adamantly advised me was

unnecessary, I sought to respect the judicial process and maintain constructive communication

with Defendant by adhering to the joint scheduling order's timeframe. Following the termination

of Mr. Taub's representation, my limited legal experience led me to initially believe that I must

strictly adhere to the rapidly approaching deadlines, without realizing that the court could relieve

such pressuring, emotional duress by granting extensions.

---

[3] *Oubre v. Entergy Operations, Inc*., 522 U.S. 422 (1998).
[4] *Restatement (Second) of Contracts § 17* (Am. Law Inst. 1981).

The last communication with opposing counsel occurred in the afternoon of April 29, 2024, wherein Plaintiff expressed concerns (Exhibit 15) and refuted Defendant's reasoning for ceasing negotiations which were that Chase has already revised it several times which seems to imply there was only a set number of revisions allowed and clarifying unsettled terms that Defendant made declarative statements about as if their word alone resolves the issues at hand (Exhibit 14). Furthermore, some revisions were a result of a breach in confidentiality, thus making their reasoning unviable. Subsequently, no response was received until June 12, 2024, at 12:08 AM, when opposing counsel unexpectedly sought concurrence on a motion to enforce the settlement agreement. These crucial details were conveniently omitted. The lack of communication and subsequent opening of the timeline and amending the complaint led Plaintiff to reasonably assume that the settlement discussions had been abandoned or paused. I believed they would restart or start anew at the same progression point in the case as before.

Moreover, opposing counsel's email on June 12, 2024, at 12:08 AM, demanding a response by 1:00 PM on the same day—merely 12 hours and 52 minutes later—was both unexpected and unreasonable under E. D. Mich. LR 7.1[5].

In *Mullane v. Central Hanover Bank & Trust Co*.[6], the Supreme Court emphasized the importance of procedural fairness, underscoring that due process requires notice reasonably calculated to inform interested parties of the pendency of an action and to afford them an opportunity to present their objections. The inadequate time provided for a response in this instance violates these fundamental principles of due process as articulated in *Mullane v. Central Hanover Bank & Trust Co.*.

---

[5] E. D. Mich. LR 7.1
[6] *Mullane v. Central Hanover Bank & Trust Co*., 339 U.S. 306 (1950)

I must also address the practical difficulties caused by this abrupt demand. As a full-time worker with responsibilities to caring for a child, a disabled Vietnam veteran, and our 99-year-old matriarch, the brief response window imposed by opposing counsel severely hindered my ability to prepare a comprehensive response. This circumstance is compounded by the simultaneous need to respond to two motions and an additional complaint while still gathering evidence and witness list, which further demonstrates the unreasonable burden imposed.

Considering these circumstances, enforcing the settlement agreement at this juncture and under these conditions would be inequitable and contrary to principles of estoppel, given opposing counsel's lack of communication and the practical challenges imposed by their unreasonable demands.

## D. Exclusion from Negotiation Talks

Plaintiff's former attorney, Mr. Taub, excluded Plaintiff from the negotiation talks and refused to further negotiate, and was not forthright which led to Plaintiff terminating his representation (Exhibit 5). Subsequent negotiations by Plaintiff were made under threat of further financial burden by Mr. Taub (Exhibit 4) and based solely on documents provided by the defense, as Plaintiff never received a complete file conveyance from the former attorney (Exhibit 8, Exhibit 9, Exhibit 10, Exhibit 11, Exhibit 12). Plaintiff has screenshots of call logs (Exhibit 6) and handwritten notes proving the limited and inadequate communication with Mr. Taub during settlement, further demonstrating the exclusion from crucial discussions and Mr. Taub not following Plaintiff's direction. The exclusion from negotiation talks by Plaintiff's former attorney, Mr. Taub, and his failure to provide a complete file conveyance not only violated principles outlined in *Jones v. Barnes*[7] regarding the duty of attorneys to involve clients in

---

[7] *Jones v. Barnes*, 463 U.S. 745 (1983)

crucial decisions and maintain effective communication but also breached Model Rules of

Professional Conduct, Rule 1.4[8], which mandates attorneys to keep clients reasonably informed

and promptly respond to their requests for information.

### E. Protection of First Amendment and Consumer Rights

Plaintiff respectfully urges the Court not to enforce any settlement agreement that could

potentially infringe upon Plaintiff's First Amendment[9] and consumer rights. This request aligns

with the principles articulated in *Bryce v. Episcopal Church in the Diocese of Colorado*[10], which

highlights the importance of protecting constitutional rights within specific contexts, and *Bose

Corp. v. Consumers Union of U.S., Inc*[11]., which underscores the need for safeguarding free

speech and preventing unlawful restrictions on fundamental liberties. Additionally, consistent

with the precedent set in *Oubre v. Entergy Operations, Inc.*[12], it is imperative that any release or

settlement agreement fully complies with statutory requirements to be enforceable, ensuring that

Plaintiff's statutory and constitutional protections are not unlawfully waived or compromised.

### F. Rule 408 Protection and Obscuring Redactions

Under Federal Rule of Evidence 408[13], communications made during settlement negotiations are

protected from use to prove the validity or amount of a disputed claim. In light of these

protections and consistent with principles outlined in *In re High Fructose Corn Syrup Antitrust

Litigation*[14] and *Goodyear Tire & Rubber Co. v. Chiles Power Supply, Inc*[15]., Plaintiff is

---

[8] Model Rules of Pro. Conduct r. 1.4 (Am. Bar Ass'n 2020).
[9] U.S. Const. amend. I.
[10] *Bryce v. Episcopal Church in Diocese of Co.*, 289 F.3d 648 (10th Cir. 2002)
[11] *Bose Corp. v. Consumers Union,* 466 U.S. 485 (1984)
[12] *Oubre v. Entergy Operations, Inc.*, 522 U.S. 422 (1998).
[13] Fed. R. Evid. 408.
[14] *In re High Fructose Corn Syrup Antitrust Litigation*, 295 F.3d 651 (7th Cir. 2002)
[15] *Goodyear Tire & Rubber Co. v. Chiles Power Supply*, Inc., 7 F. Supp. 2d 954 (N.D. Ohio 1998)

concerned by opposing counsel's presentation of redacted communications. These redactions obscure the context and intentions of the negotiations, undermining the clarity and integrity of our ongoing discussions and highlighting the absence of a final agreement.

## G. Misconduct & Conflict of Interest by Former Attorneys & Duress

Not to sound repetitive, but uncertain how exactly all court documents relate to each other: Plaintiff had every intent of having effective counsel in these matters, hence for months she saved and did additional gig work to be able to afford an attorney, Mr. Adam Taub. Model Rule 1.16(a)(2)[16] is designed to prevent conflicts of interests and the influence of an attorney's emotional, personal, and financial circumstances on a case. However, Mr. Taub ignored this rule, forcing us to confront the impact of his compromised state on my representation. Despite respecting Mr. Taub's personal issues and grieving process, I must discuss this to explain why I cannot accept his work since early December or the settlement.

With deep sympathy, I inform the court that Mr. Taub's wife was ill from early December until her passing on February 27, 2024. During this time, Mr. Taub continued working on my case. His emotional and personal issues compromised his ability to represent me effectively, breaching our implicit contract.

I would have preferred Mr. Taub to prioritize his family over my case.

Mr. Taub did not disclose this information; it came to light through a third party and my own research. Mr. Nitzkin informed me on February 29, 2024, that Mr. Taub's wife had passed "last week" and was ill "60 days previously." These statements were false. My research revealed that Mrs. Taub actually passed on February 27, 2024 (Exhibit 3). Further investigation confirmed that

---

[16] *Model Rules of Professional Conduct* R. 1.16(a)(2).

Mr. Taub had been dealing with significant personal struggles since early December 2023 (Exhibit 2).

On the day his wife died, Mr. Taub first presented the settlement to me with his approval (Exhibit 1). I had not seen any parts of the settlement before February 27, 2024. Despite requesting an in-person discussion, two days later, Mr. Taub yelled at me on the phone to sign when I raised concerns (Exhibit 7). The settlement did not meet our agreed expectations and was confusing (Exhibit 13). He kept saying, "I don't have time" and "I can't take this."

Mr. Taub abruptly and emotionally quit, then rashly filed his motion to withdraw (Exhibit 13) within an hour of our call (Exhibit 7), but not before threatening me with immediate legal actions by the defense and further financial burden if I did not sign (Exhibit 4). According to Model Rule 1.16(d)[17], Mr. Taub had an obligation to keep the case alive and give me reasonable time to find new counsel, which he did not do. Furthermore, as protected by the Sixth Amendment's[18] guarantee of a fair trial and the due process rights under the Fourteenth Amendment[19], a person in the United States will not suffer sanctions for exercising their right to use the court to resolve disputes. Mr. Taub's mention of financially burdensome sanctions can be inferred as an attempt to cause me emotional and financial duress and coerce me into signing the settlement. The undue pressure exerted by Mr. Taub and the lack of proper advisement deprived Plaintiff of this fair opportunity, further invalidating the settlement agreement.

According to Model Rule 1.16(a)(2)[20], an attorney must withdraw from representing a client if "the lawyer's physical or mental condition materially impairs the lawyer's ability to represent the

---

[17] *Model Rules of Professional Conduct* R. 1.16(d)
[18] Sixth Amendment: U.S. Const. amend. VI.
[19] Fourteenth Amendment: U.S. Const. amend. XIV.
[20] *Model Rules of Professional Conduct* R. 1.16(a)(2).

client." Mr. Taub failed to respect me nor inform me of his personal circumstances, which would have prompted me to seek other representation.

Additionally, there was a breach of attorney-client privilege. After firing Mr. Taub, the defense counsel made changes to the settlement based on confidential information, indicating a breach. Based on my study of history, the acknowledge seeking question on the use of gendered terms in law was an inquiry I posed to my counsel (and expected confidentiality with the answer that it simply makes it clearer), as historically women used pen names and my knowledge that the Chicago Style and MLA explicitly avoid honorifics that indicate gender. Taken out of context, the question and subsequent edits could be politicized as a pronoun-war or used to infer things to Plaintiff's detriment (Exhibit 15). More concerning is the fact that a breach occurred at all and the unknown extent of it. Mr. Taub also accidentally released my protected information in disclosures, including my birthday and social security number, to opposing counsel, further demonstrating negligence and a breach of ethical standards.

I uncovered false information from former attorneys, including contradictory advice about the settlement's permanence and incorrect tax advice. The breach of confidentiality and ethics by Mr. Taub and subsequent mishandling by Mr. Nitzkin eroded my confidence in their representation and previously accepted advice. According to the Restatement (Second) of Contracts § 163[21], a contract is voidable if a party's assent is induced by fraudulent or material misrepresentation upon which the party is justified in relying, which I was.

Given Mr. Taub's compromised condition since early December 2023, the negotiations were fundamentally flawed and imbalanced, making the settlement unfair and unenforceable.

---

[21] Restatement (Second) of Contracts § 163

*Strickland v. Washington[22],* a pivotal U.S. Supreme Court case, this precedent underscores the

critical role of competent legal representation in ensuring fair proceedings, applicable even to

civil contexts where compromised representation may similarly impact the fairness of

negotiations and settlements.

The court in *Hamilton v. Farmers Insurance Co[23]* underscored that any factors undermining an

individual's right must be addressed. Due to my former lawyer's recent personal tragedies of the

loss of his wife after a prolonged illness and his rash emotionally driven behavior afterwards and

inability to complete file conveyance, I have no faith or confidence in his capacity to have

adequately represent my interests.

Given the critical issues highlighted in *Hamilton v. Farmers Insurance Co.[24]* emphasizes the

importance of fair compensation and proper representation, I have submitted a motion to dismiss

without prejudice and request this motion to enforce be denied. As I currently am unsuccessful in

obtaining new legal representation, I believe it is in my best interest to dismiss the case without

prejudice. This will allow me to ensure that my rights and interests are fully protected, consistent

with the principles set forth in *Hamilton v. Farmers Insurance Co.[25]*

## H. E. D. Mich. LR 7.1[26] & Judge's Scheduling Order Violated

The short notice given by the opposing counsel for the response was unreasonable and did not

comply with the spirit of E. D. Mich. LR 7.1. This rule aims to facilitate good faith interactive

exchanges to resolve matters without court intervention. The lack of adequate notice prevented a

fair opportunity for Plaintiff to respond appropriately. While Plaintiff did respond within the

---

[22] *Strickland v. Washington*, 466 U.S. 668 (1984)
[23] *Hamilton v. Farmer Ins. Grp.*, Civil Action 14-cv-01211-WJM-MJW (D. Colo. Oct. 29, 2014)
[24] " "
[25] " "
[26] E. D. Mich. LR 7.1

timeframe, it was under their strict time constraints, and unfortunately with minimal research or

negotiating time available to her - specifically 12 hours and 52 minutes, most of which were at a

time most people, including Plaintiff, are sleeping.

Additionally, Chase's motion includes numerous cases to 92 pages worth, in violation of the

judge's scheduling order issued on April 29, 2024, which specifies that only the two or three

most relevant cases should be attached. This over-citation not only violates the court's

instructions but also burdens the court and parties with unnecessary references, financial

burdens, and further complicating the procedural fairness.

## I. Contradictions in Relief Sought

The relief sought by Chase in their motion to strike the amended complaint and enforce the

settlement agreement contradicts the terms stipulated in the purported settlement agreement. This

contradiction undermines their argument that a binding agreement was reached and further

illustrates the procedural irregularities and lack of mutual assent. According to *Bates v. State Bar*

*of Arizona*[27], mutual assent and clear, consistent terms are essential for a binding agreement.

Chase's refusal to continue negotiations was based on weak and unsubstantiated reasoning, and

the fact that it is obscured by redactions further demonstrates the lack of transparency and

procedural fairness in their approach.

## J. Against Defendant's Motion to Strike Plaintiff's First Amended Complaint

Defendant JPMorgan Chase Bank, N.A. has moved to strike Plaintiff's First Amended

Complaint, alleging that it is repetitive and redundant. However, the First Amended Complaint

introduces substantial changes and clarifications that distinguish it from the original filing.

Specifically, the amended complaint includes detailed factual allegations supported by specific

---

[27] *Bates v. State Bar of Arizona*, 433 U.S. 350 (1977)

attachments, which were not part of the initial complaint. These attachments (A-G) provide concrete evidence to substantiate the claims and are crucial for the court's understanding of the case. Moreover, the amended complaint references relevant case law and procedural history to better contextualize JPMCBNA's conduct and establish a stronger legal foundation. Additionally, the demand for a bench trial, rather than a jury trial, reflects a strategic shift to focus on legal arguments and evidentiary support more suitable for judicial adjudication. These changes are not merely repetitive but are necessary to ensure a thorough and fair evaluation of Plaintiff's claims, and therefore, the motion to strike should be denied.

## K. Lack of Proper Advisement

The principles of procedural fairness and due process, as emphasized in *Mullane v. Central Hanover Bank & Trust Co.*[28], require that all parties have a fair opportunity to understand and agree to the terms of a contract. The undue pressure exerted by Mr. Taub and the lack of proper advisement deprived Plaintiff of this fair opportunity, further invalidating the settlement agreement.

The settlement agreement contains a clause stating that Plaintiff was advised by her own parties regarding the settlement terms. This is factually incorrect as Plaintiff did not receive adequate advisement from her legal representation at the time, Mr. Taub. Mr. Taub failed to explain the settlement terms properly and pressured Plaintiff to sign the agreement under duress, less than 48 hours after the passing of his wife, which compromised his ability to provide competent counsel. According to the Restatement (Second) of Contracts § 163[29], a contract is voidable if a party's assent is induced by fraudulent or material misrepresentation upon which the party is justified in

---

[28] *Mullane v. Central Hanover Bank & Trust Co.*, 339 U.S. 306 (1950)
[29] Restatement (Second) of Contracts § 163

relying. In this case, the misrepresentation about Plaintiff receiving advisement voids the agreement.

### III. Conclusion

For the reasons set forth above, Plaintiff respectfully requests that this Court deny Defendant's motion to enforce the settlement agreement and strike the amended complaint, and awarding its costs and attorneys' fees, as well as any further relief the Court deems just.

If Your Honor finds in favor of the Defendant on the motion to enforce, I respectfully request that the Court expressly include the settlement terms in its order or retain jurisdiction over the settlement agreement, as this will facilitate addressing any future breaches, pursuant to the authority established by the U.S. Supreme Court in *Kokkonen v. Guardian Life Ins. Co. of America*[30].

Respectfully submitted,

**By:  /s/ Katrina Bergunder**
Katrina Bergunder
24674 Republic Ave
Oak Park, MI 48237
(773)853-7085
*Pro per*

Dated: July 16, 2024

---

[30] *Kokkonen v. Guardian Life Ins. Co. of America*, 511 U.S. 375 (1994).

**Certificate of Service**

I, Katrina Bergunder, a citizen of Michigan and the United States, hereby certify that on July 16, 2024 I electronically filed ("e-filed") the PLAINTIFF'S RESPONSE TO DEFENDANT'S MOTION TO STRIKE THE AMENDED COMPLAINT AND ENFORCE SETTLEMENT with the Court and served it upon all parties in accordance with the procedures established by the Court. In addition, a hard copy on one side only and tabbed to Chambers has been mailed to the courthouse by United States Postal Service.

 I served all parties entitled to notice with the foregoing document by electronic filing and service to each respective address on July 16, 2024

**By:  <em>/s/ Katrina Bergunder</em>**
Katrina Bergunder
24674 Republic Ave
Oak Park, MI 48237
(773)853-7085
*Pro per*

Dated*:* July 16, 2024

21